[No. A021789. First Dist., Div. One. Apr. 25, 1985.]

PACIFIC COAST SHIPPING COMPANY, Plaintiff and Respondent, v. FRANCHISE TAX BOARD, Defendant and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, and Patricia Streloff, Deputy Attorney General, for Defendant and Appellant.

Graham & James, Norman J. Laboe, Jared E. Peterson and David Colker for Plaintiff and Respondent.

**OPINION**

**NEWSOM, J.**—The instant appeal is prosecuted by the Franchise Tax Board (Board) from a summary judgment rendered in favor of respondent Pacific Coast Shipping Company (PCSC).

The controversy concerns the propriety of a corporation income tax deficiency assessed by the Board against PCSC for the taxable year ending August 31, 1977.[1] At issue is whether the income of PCSC for that year is exempt from tax under section 24320 of the Revenue and Taxation Code. That section, enacted in 1969, provides as follows: "Income derived from the operation of aircraft or a ship or ships by a corporation organized under

---

[1]The Board audited PCSC and its subsidiaries (it was mutually agreed that PCSC would be assessed on behalf of the subsidiaries) for the tax year ending August 31, 1977, and assessed a tax liability of $20,903. After paying this assessment with interest, PCSC filed for a refund and, upon the Board's rejecting this claim, commenced the instant action.

the laws of a foreign country shall not be included in gross income, and shall be exempt from the taxes imposed by this part if:

"(a) The aircraft are registered or the ships are documented under the laws of the foreign country;

"(b) The income of the corporation is exempt from national income taxes by reason of a treaty or agreement between such foreign country and the United States which provides for an equivalent exemption to corporations organized in the United States; and

"(c) Units of government (other than at the national level) within such foreign country do not impose a tax upon corporations organized in the United States with respect to income derived from the operation of aircraft registered or ships documented under the laws of the United States."

With respect to the tax year in question, it was agreed by stipulation that: (1) PCSC and its wholly owned subsidiaries were organized under the laws of Liberia; (2) each corporation derived all its earnings from the operation of vessels in international commerce; (3) the vessels were documented under the laws of Liberia; and (4) units of government within Liberia, as well as the Liberian national government, did not impose any tax upon income which corporations of the United States derived from the operation of ships documented under the laws of this country. The parties also agreed that the income of PCSC and its subsidiaries was exempt from federal income taxes by virtue of 26 United States Code section 883. That section provides in relevant part: "The following items shall not be included in gross income of a foreign corporation, and shall be exempt from taxation under this subtitle: [¶] (1) Ships under foreign flag.—Earnings derived from the operation of a ship or ships documented under the laws of a foreign country which grants an equivalent exemption to citizens of the United States and to corporations organized in the United States."

It is undisputed that the conditions of subdivisions (a) and (c) of section 24320 have been satisfied. The dispute between the parties concerns the condition set forth in subdivision (b), namely, that the income of the foreign corporation be exempt from federal income taxes "by reason of a treaty or agreement . . . ." The Board contends this phrase should be interpreted to mean a "contractual obligation of a treaty nature" and that the reciprocal tax exemption existing between the United States and Liberia under 26 United States Code section 883 does not rise to that dignity. PCSC maintains that the reciprocity existing between the United States and Liberia

constitutes not only an agreement but, even under appellant's proposed interpretation, a contractual obligation in the nature of a treaty.

Unfortunately, the legislative history sheds little light on either the meaning of the disputed phrase or the reasons for its inclusion in the section. The Legislative Counsel's Digest is silent as to the *means* by which reciprocity is to be attained, and focuses only on the desired *result:* "[The bill] provides that income derived by foreign corporations from the international operation of aircraft or ships shall be excluded from gross income and exempt from tax under the Bank and Corporation Tax Law *if the income is also exempt from federal income tax* and political subdivisions within the foreign country do not impose an income tax upon U.S. corporations on the same type of income." (Italics added.) And while the means of achieving the desired reciprocity are discussed in various correspondence between the United States Treasury (which initially had requested such an enactment in 1968 in connection with negotiating a tax treaty with Japan) and the Board (which drafted the legislation), that correspondence variously and without apparent distinction or differentiation refers to "income tax treaty," "income tax convention," "treaty or agreement," and "treaty or other international agreement."[2]

In short, the legislative history, insofar as it might provide a key to the meaning of the debated phrase and the reason for its inclusion, is inconclusive and ambiguous. We have concluded, however, that implicit in the phrase is a modus vivendi whereby nation-states manifest an intent to effect a workable compromise on issues of contention. Section 883 of title 26 United States Code provides the mechanism for just such a modus vivendi.

The nature and purpose of the arrangement embodied in that section have been summarized thus: "The method . . . for the taxation of foreign persons by the United States does not easily lend itself to the taxation of certain foreign persons, such as shipping companies, whose activities bring them

---

[2]Clearly the "agreement" contemplated by the statute is an international understanding between sovereign nation-states. The *Restatement (2d) of the Law of Foreign Relations of the United States, section 115,* defines such an understanding as "an agreement between states or international organizations by which there is *manifested an intention* to create, change or *define relationships* under international law." (Italics added.) The comment to this definition informs that: "International agreements between states may have a variety of titles. Titles commonly used include treaty, convention, protocol, declaration, agreement, act, covenant, statute, and charter. Frequently there is no apparent reason for the use of one title rather than another. The choice often results from considerations that have no legal significance. The title of an agreement between states does not, therefore, determine whether it is an 'international agreement' within the meaning of this Section. The determinant is whether the instrument evidences a manifestation of intention that it should have legal effect."

within our taxing jurisdiction and the taxing jurisdictions of many other nations. If each country of the world with which that person dealt imposed an income tax, the tax burden could become intolerable. A similar tax burden would also confront United States persons engaged in world-wide shipping activities.

"In an effort to avoid the chaos which could result if all countries were to engage in a 'free-for-all' taxing the shipping activities of persons from other countries, and in appreciation of the difficulty of allocating shipping income to various nations based on a source concept, countries have, generally, responded uniformly *by internal law or by tax treaty* providing an exemption from each nation's tax on a reciprocal or equivalent basis. This concept was intended to eliminate the taxation of a person's shipping activities by multiple jurisdictions, notwithstanding the person's presence within those jurisdictions for tax purposes.

"The response by the United States took place more than fifty-seven years ago, when the exclusion now contained in sections 872(b)(1) and 883(a)(1) was first enacted as part of the Revenue Act of 1921. This exclusion has remained virtually unchanged in our tax law since that time. According to the Senate Finance Committee of the 67th Congress, the policy behind the exclusion was 'to encourage the international adoption of uniform tax laws affecting shipping companies, for the purpose of eliminating double taxation." (Bishel, *Income Tax Treaties,* Practicing Law Institute (1978) pp. 365-366, italics added; see also Baker & Fritzhand, *United States Federal Income Taxation of Foreign-Flag Shipping Earnings,* 26 National Tax J. 537.)

The Treasury Department has interpreted the section in regulation 1.883-1, which, as relevant, provides: "(a) *Earnings of foreign ships . . .*—(1) *Basic rule.* So much of the income from sources within the United States of a foreign corporation as consists of earnings derived from the operation of a ship or ships documented . . . under the laws of a foreign country which grants an equivalent exemption to citizens of the United States nonresident in that foreign country and to corporations organized in the United States shall not be included in gross income.

"(2) *Equivalent exemption*—(i) *Ships.* A foreign country which either imposes no income tax, or, in imposing that tax, exempts from taxation so much of the income of a citizen of the United States non-resident in that foreign country and of a corporation organized in the United States as consists of earnings derived from the operation of a ship or ships documented under the laws of the United States is considered as granting an equivalent

exemption for purposes of the exclusion from gross income of the earnings of a foreign ship or ships.''

A commentator on this regulation has noted: ''Not evident from the regulation itself is the fact that a foreign country may qualify as a reciprocal exemption nation, notwithstanding that it imposes an income tax that does not exempt the U.S. persons referred to in Regulation section 1.883-1. Such a foreign country may qualify solely by virtue of its treaty or agreement with the United States. In permitting a foreign country to so qualify, the Treasury Department and the Internal Revenue Service have gone beyond a strict reading of the regulation, which seems to indicate that the foreign country's exemption for U.S. persons must be contained in its income tax law. Such a strict reading would, of course, violate the policy behind sections 872(b)(1) and 883(a)(1).'' (Bishel, *supra,* at p. 368, fns. omitted.)

The Treasury Department and the Internal Revenue Service, conscious of the taxation problems peculiar to the shipping industry, have viewed relevant treaties and reciprocal provisions of internal law to be for present purposes equivalent. This functional equivalence is underscored in documents relating to the 1948 amendment to section 883, which extended the exemption to include earnings from aircraft of foreign registry. This exemption exactly parallels the exemption for earnings derived from ships under a foreign flag and uses identical language. Both the House Ways and Means and Senate Finance Committee Reports explain this exemption as follows: ''The bill would extend to earnings of aircraft under a foreign registry the reciprocal income-tax exemption now granted to earnings of ships under foreign flag . . . . [¶] The exemption proposed to be extended by the bill to income consisting of earnings from the operation of foreign aircraft has already been so extended under income-tax conventions with Canada, Great Britain, France, and Sweden. The bill, therefore, would make generally available on a reciprocal basis, the exemption of aircraft earnings already accomplished by convention with these four countries. *Other tax conventions are in process, but negotiations leading to the final exchange of ratifications of such conventions are usually long and tedious, involving many controversial issues. Your committee believes, therefore, that it would be definitely in the public interest to facilitate the exemption of aircraft earnings in the manner provided by the bill.* Substantially all the earnings of ships are exempt from taxation by foreign countries and it is anticipated that the same policy with respect to earnings from the operation of aircraft will continue to find international favor. [¶] *Your committee is informed that reciprocal exemptions like the one proposed by this bill for*

*incorporation into our income-tax law are already on the statute books of a number of foreign countries. Exemption of our air carriers from income taxation in those countries, therefore, will become practically automatic upon the enactment of the bill. The resulting saving of the time and expense necessarily involved in bilateral convention procedure is immediately apparent.*" (Italics added.)[3]

Congress, then, also views reciprocal provisions of internal law as a mechanism whereby the relatively simpler and more immediate concerns of international shipping and aircraft can be expeditiously dealt with in isolation from more complex issues spanning the whole range of international economic relationships. The "tedious" treaty process need only be invoked in dealing with these latter issues, where a comprehensive approach is sought to address such disparate yet pervasive matters as dividends, interest, royalties, patents and copyrights, information and technology exchange, etc. Such a reciprocal internal arrangement as contemplated in section 883 may accordingly be viewed as an "agreement to agree" presently on such matters as shipping while deferring until later the discussion and formal settlement of more wide-ranging and perplexing issues. As such, it may be properly deemed a modus vivendi implicit in the term "agreement" as used in Revenue and Taxation Code section 24320. Respondent, being within the ambit of the former statute, is consequently within the exemption provided by the latter.

The judgment is affirmed.

Elkington, Acting P. J., and Holmdahl, J., concurred.

---

[3](H. R. No. 1435, 80th Cong., 2d Sess. pp. 1-2 (1948), Sen.Rep. No. 1128, 80th Cong., 2d Sess. p. 2 (1948), reprinted in 1948 U.S. Code Cong. & Admin. News, at pp. 1515-1517.)